Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois is now in session. The Honorable Justice Vaughn presiding along with Justice Welch and Justice McEnany. The first case this morning is 522-0007, People v. McPike. Arguing for the defendant appellant is Levi Harris. Arguing for the appellee state is Miles Kelleher. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for a rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Good morning. Mr. Harris, are you ready to proceed? Yes, your honor. All right, you may proceed. Your honors, I'm assistant defender Levi Harris and I'm here today on behalf of my client, the appellant Jared McPike. May it please the court, without conceding our second issue, in the interest of time, I'd like to confine my argument this morning to issue one. Jared McPike was arrested on suspicion of armed robbery of a convenience store in Carbondale. Two times during his interrogation by police, Mr. McPike invoked his Miranda right to counsel and both of those times the detective continued the interrogation rather than scrupulously honoring Mr. McPike's right. Counsel, how did he invoke it? What did he exactly say? Your honor, there was an initial invocation where he said, he said, I'd like to talk to you, but I ain't got no lawyer present. Okay, so it didn't ask for a lawyer or anything. What's that mean? We would disagree with that, but even if that weren't clear, if that were the only one, I think it would be a much less clear case for Mr. McPike, but he went on just a few minutes later to say, is it possible if I could have a lawyer here? And in between those two invocations, he said, so he said, is it possible? He didn't say I want a lawyer. Well, your honor, the thing that was immediately before saying that was the police officer saying, I'm not going to tell you not to have a lawyer, but if you ask for a lawyer, he said, I'm just giving you the opportunity to tell your side of the story. I'm not telling you you can't have it. And then directly then Mr. McPike said, well, is it possible if I could have a lawyer present? So we would disagree. We would disagree that he wasn't asking for an attorney in that case. Counsel, could the officers question after that statement by your client, uh, which could be construed as ambiguous? Couldn't the officers subsequent follow-up questions be construed as, as him doing what the case law has mandated or suggested to clarify whether the defendant really wants a lawyer then? Your honor, I don't think so. Especially after that second invocation, uh, even after the first invocation, you know, he, he says, I would like to talk to you, but I haven't got a lawyer present, or I ain't got a lawyer present. Uh, I mean, the, the, the clear implication of that, I, I believe is, I don't want to talk without a lawyer present, but even if that part were not clear when he says, uh, is it possible if I could have a lawyer present? I, I don't think there's any question that by that time, the officer knew what my client was asking. My client's a 18 or 19-year-old kid. He's got some cognitive deficits, and I'm not saying that the, the, uh, officer was on, on notice that all of those things existed at that time, but that's why the onus is placed on the, the officers, the police, to scrupulously honor that right, you know, taking great care not to do something that's wrong. And sure, a follow-up question would be like, hold it, uh, you mentioned lawyer. Do you want a lawyer right now? Do you want to stop? Fine. What he was doing, what the police officer was doing, which ultimately was successful, was trying to talk my client out of invoking that right by saying, I'm not going to tell you you can't have a lawyer, but I'm just giving you the opportunity to tell your side of the story, uh, implying that if you don't talk now, forever holds your peace, kind of like the, uh, old wedding admonition. So I, I don't think the questions that were asked here were the kinds of questions, uh, that were, uh, considered in Davis and were sort of sanctioned in Davis, uh, to clarify what an officer believed was ambiguous. Does that answer the, your question? Yeah, thank you. Um. Mr. Harris, I thought when the, the defendant made the second request about a lawyer, the detective said, that's fine, we're good to go. And then the defendant said, I don't know. Doesn't that then make it clear that he's not being, uh, unequivocal, that he is still ambivalent about whether or not he wants a lawyer? Because he says, I don't know. But what are the detectives supposed to do then? Well, your honor, I think scrupulously honor the right. I think in our position, and I understand you, you, your honors are the ones in the robes that will ultimately make the call. But our position is that by the time of that second invocation, it is clear he wants an attorney. And the case law is such that if further things, uh, further waiver by the defendant comes at the behest of the police at that point, then, you know, that's not valid. And that's what he knew how to do it though, because in the end he said, I plead the fifth. So I mean, that's something that people hear all the time on the television and stuff like that. And I think by that time, it's like, look, you're not getting it. I don't want to talk to you without a lawyer present, or at all. Either one of those would count as a Miranda invocation. Um, and I, and I think that, you know, saying I don't know is not necessarily, um, it's not necessarily going back on what he had initially said anyway, but even if it were, that only came at the pressing of, uh, of the officer. Now the officer said, I can't get you a lawyer today. Certainly there's no requirement that a lawyer be provided on site right then, uh, for a defendant. But when he asked, well, is it possible if I could have a lawyer present? And the very next thing that the officer says is, I can't get you one today. Uh, it's, it's kind of like, well, you're just, you're going to have to sit there longer, uh, which certainly true, but it was talking the client out of doing this. By affirming, uh, the trial court here, what would be happening essentially is sanctioning police officers rather than scrupulously honoring a right, uh, getting sort of a pat on the back and an attaboy for talking a defendant back from an invocation, something he has the right to do under, under the, uh, federal and, and Illinois case law and constitution, um, and rewarding the officers in the state by allowing that, that, uh, evidence to be used against the defendant. It was a long answer and I don't know if it got at what you were, uh, asking your honor. I think I understand your point. Yes. Thank you. That's, that's the main thing. If I, if you understand it, I can't, I can't go more than that. Uh, your honors, if I could talk briefly just about a harmless error, you know, there are three tests for harmless error, uh, in a constitutional case like this, the state bears the burden, not only of that once the error is shown, um, there are three tests for it. One is whether the error could have contributed to the verdict here. It almost certainly contributed to the verdict where this was the missing link between Mr. McPike and the armed robbery. Uh, everything else could have supported his theory that, you know, look, I wasn't the one who went into the, to the, well, even that came from Mr. McPike's statement. He's found with a bag that has proceeds of a robbery, uh, but he's found, you know, 15 or 20 minutes later, if, and there were police in the area, there were police almost immediately pulling into the convenience store, somebody could have thrown this bag down and he just found it, you know. I'm not saying that that took place. What I'm saying is that was a plausible thing for defense to argue to the jury without Mr. McPike's statement. Mr. McPike's statement is what put the state over the edge and contributed to, uh, the verdict. The second test is whether the evidence of guilt is overwhelming. Here we would argue that it isn't, and there certainly wasn't cumulative of any properly admitted evidence where this was the, the only evidence of its kind. Your honors, I will be back for rebuttal, but I see that I'm out of time unless you have more questions. Justice Welch, questions? No question. Justice McHaney? No questions. All right, thank you. Mr. Kelleher? Good morning, your honors, counsel. Miles Kelleher on behalf of the people. May it please the court. The trial court properly denied defendant's motion to suppress statements, and if any error occurred, it was harmless beyond a reasonable doubt. A suspect must articulate his desire for an attorney in a clear enough manner that a reasonable officer would understand the statement to be a request for an attorney. Here, defendant did not make a clear and unambiguous request for counsel. Now, it's important to view the statements that the defendant did make in context. Here, you had a situation where defendant had already been advised of his Miranda rights. He had waived those Miranda rights. He had signed a written waiver, and then the interview began. So, at that point, the officer believed that defendant was willing to talk without counsel present, and the interview went on for a few minutes, and it was only after a few minutes that the defendant said, I want to talk to you, bro, but I ain't got no lawyer present. Well, first of all, that's a I want to talk. On the other hand, he's saying, well, I don't have a lawyer. So, it wasn't clear. It was unequivocal, and it wasn't, as earlier stated, it wasn't a request for an attorney. So, a reasonable officer, given these circumstances, would have understood only that defendant might be invoking his right to counsel. So, at that point, the law allows an officer to ask a clarifying question to determine whether or not a suspect actually wants an attorney, and that's exactly what the officer did in this case. The officer sought clarification and reiterated to the defendant that it was his choice whether he wanted to have an attorney, and if that's the case, the conversation would stop, but if he wanted to keep talking, it was his choice. Mr. Kelleher, the defense talks to the case of People v. Howerton. In that case, the defendant said, well, can I have a lawyer then, and the appellate court said that was enough to invoke. Is it different in this case when he says, is it possible if I can have a lawyer? Does the saying, the phrase, is it possible, does that change things? Well, in Howerton, there was, there were, it was a different set of facts. You're correct in that the defendant did make that statement, but there were other things going on too. You know, rather than the officer explaining the defendant's rights, he started saying things like, you know, are you stupid? So, you had a different scenario where it was a much different response from the officer, and the statements from the defendant were clearer. He was saying, you know, take me upstairs. If I'm under arrest, either that or I want a lawyer. So, each case, at one point, he says, get me a lawyer. So, each case has to be assessed under its own circumstances, and I submit that this case is very similar to the United States Supreme Court in Davis versus U.S., and I urge this court to seek guidance from that case, and hence the Supreme Court, and during that case, during the interview, the defendant said, maybe I should talk to a lawyer, and the Supreme Court found that that was not a request for counsel, and that the agents could seek clarification. So, in Davis, you have the I should talk to counsel. Maybe I should talk to a lawyer. In this case, defendant says, but I ain't got no lawyer present. It's essentially the same thing. It's an ambiguous statement. It's unequivocal, and a reasonable officer in that position could seek clarification. That's exactly what the Davis court says that an officer can do in that position. All right, counsel. Davis does say that, but here, after the statement, I ain't got no lawyer present, instead of the officer saying, are you telling me you want to have a lawyer now? He says, I'm just giving you the opportunity to come clean. How is I'm giving you the opportunity to come clean? Clarification of anything. Well, I think that was the officer's way of saying, you know, you can continue talking if you want. And he was basically saying, you have a choice to talk if you want. You can say whatever you want. Whatever come clean means, you know, defendant could, you know, admit to the offense, or he could, you know, he could provide a reasonable explanation as to why he wasn't culpable of the offense. So come clean can mean, you know, different things. Aren't the words come clean clearly? Go ahead and admit it because you're guilty. Well, no, I wouldn't say that, your honor. That's one way of interpreting it. But again, it's come clean as an ambiguous statement. And, you know, reasonable people can view it in different ways. But basically, this officer was invoked his right to counsel. And when defendant said, I want to plead the fifth, that's what the detective did. He terminated the conversation at that point. He left the room. So it shows that when the defendant made statements that were not clear, not unambiguous, the officer sought clarification. But once the defendant made a statement that was clearly a request to terminate the conversation, the officer immediately stopped the conversation. So I think it's important to look at the entirety of this situation. And the judge, trial court judge, found that defendant did not make a clear and unequivocal invocation of a right to counsel. And trial court even also found that even if defendant did at some point, he reinitiated the conversation. And a suspect can waive an earlier request for an attorney by initiating further communication. And if at some point in this conversation defendant did invoke his right, he immediately or almost immediately then said, well, it was just to get by or I did this for the bread. So he really didn't provide an opportunity for the officer to respond and say, OK, we'll stop this conversation. But I do just, since I only have two minutes left, I do just briefly want to mention the harmless error argument in the event that this court does find error. And I might have had this court could, if it so chooses, could jump directly to the harmless error argument. That's been done in some cases where the court will jump directly to the harmless error argument. First of all, there's no requirement that a reviewing court must use all three approaches. Here, if you look at the totality of the evidence, it was overwhelming. The error did not contribute to the conviction. The other evidence that was properly admitted of defendant's guilt overwhelmingly supported the conviction. You have a situation where there's a robbery at the Omer's Food Mart. Two offenders go in wearing masks. They have guns. Shortly thereafter, two men, one of them identified afterwards as defendant, are in close proximity to the scene they start running. Defendant is carrying a purple backpack. Inside the backpack has the proceeds of the robbery, cash, cigarettes, cigars, receipts from the food store, also a Glock 22 handgun, handgun style BB gun, a black ski mask, and the old man Halloween style mask that was shown on the video during the robbery. And what's more, DNA samples is taken from the inside of the mask, and it matches defendant's DNA. Now, the notion that defendant may have just picked up this backpack is, you know, improbable. And for that to happen, he would have had to, you know, go through the backpack, take out the mask, lick the inside of it, or somehow transfer enough sufficient amount of DNA to take a sample, put it back in the backpack, then run off with it, and then get it back to the police. That's a fanciful scenario, and it's just, this court can use its common sense in assessing defendants, whether or not this evidence was harmless, beyond a reasonable doubt, and I submit it was when you look at it. Thank you, Mr. Kellner. Questions, Justice Welch? No questions. Other questions, Justice McKinney? No further questions. All right, Mr. Harris? Yes, Your Honors. If I could, I would take the last thing first as to harmless error. I don't think, you know, the counsel said this court can use its common sense, and certainly it can. I would hope that you do. But I don't think that it's proper for the court to put itself in the jury's shoes and say, well, if we were on the court, or we were on the jury, we would not have bought this argument. The question is whether this jury would have bought the argument in the absence of Mr. McPike's statements, and it's certainly plausible that they could have. I want to go back to the question of the invocation itself. Counsel said that while he had already waived his right at the beginning, we would argue that that cuts both ways, because if he's waived his right, and then all of a sudden he starts talking about a lawyer, that ought to throw up red flags. You know, I mean, that's not consistent with an earlier waiver. It's support for an invocation. We distinguished Davis in our reply brief, and I appreciated the question to counsel, but there's no question if there is an ambiguous statement, the police have a right to ask a clarifying question. But our argument is twofold about that. First, we dispute that these were ambiguous statements, certainly not the second invocation. The second of all, even if that first invocation was not clear and unequivocal, counsel didn't ask a clarifying question. As your honor pointed out, he said, you know, this is your opportunity to come clean. Counsel said, well, come clean can mean different things to different people, maybe. But one thing that it does not mean emphatically, or maybe it would mean for the first time today, is that come clean means I'm going to go get you a lawyer. Clearly, not what the officer was trying to do. He wasn't trying to clarify, he was trying to talk my client out of invoking his rights. Counsel said that when my client actually said I want to plead the fifth, the officer stopped. Well, of course he stopped. By that point, Mr. McPike had already incriminated himself plenty to get a conviction. So, I mean, there's nothing else for the state to do, sit in there and jaw with my client. Of course, he walked out of the room at that point. It's also true, I think it was Justice Souter who wrote the line that a defendant need not speak with the discrimination of an Oxford Don in order to invoke his rights. I mean, they don't have to use the kind of words that we use in the courtroom to invoke the Fifth Amendment. If they did, then we ought to be paying to send a lot more people to law school so they know how to deal with the police. But that's not the case. Finally, well, second to finally, the state never says that the police scrupulously honored this right at all. It focuses on, well, the statements were equivocal and they were ambiguous and then it skips to, well, he reinitiated. It's important to note they never argue at all that, well, the police scrupulously honored initially and then my conversation anew. But second of all, on that point, where the state says, well, the client reinitiated the conversation, the conversation never stopped. The fact that the police push him to keep talking and then he keeps talking, that's not reinitiation. Nobody would say if nobody ever stopped breathing, oh, look, this guy's been revived. There was no cessation in the conversation, no walking out, no switching rooms, nothing like that that would indicate that, okay, this conversation's over until you either get a lawyer or seek us out, ask to speak to us about the case again. So we reject that this was a reinitiation. If your honors have any questions, I'm happy to answer them. Otherwise, it's been a very vigorous panel, makes the time fly by, and thank you for your consideration of Mr. McPike's rights. Thank you, Mr. Harris. Other questions, Justice Welch? No questions. Justice McKinney? No questions. All right, we appreciate your arguments. We will take the matter under advisement and we will issue a decision in due course. Thank you.